**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DEBRA WOOD,**

> **Plaintiff,**

**v.**                                                    **Case No.  8:06-cv-687-T-27TBM**

**CELLCO PARTNERSHIP,**
**d/b/a VERIZON WIRELESS,**

> **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral by the Honorable James D. Whittemore for a Report and Recommendation on **Defendant's Motion to Strike and Motion to Dismiss Certain Claims in Plaintiff's Amended Complaint** (Doc. 5).  By its motion, Defendant seeks an order striking Plaintiff's claims for compensatory damages in Counts I and II and Plaintiff's claims for compensatory and punitive damages in Count IX of the Amended Complaint (Doc. 4).  Additionally, Defendant seeks an order dismissing certain claims asserted in Counts II, IV, VI, VIII, and IX of the Amended Complaint for failure to state a claim upon which relief can be granted.  Plaintiff filed a response in opposition (Doc. 7).

I.

Plaintiff Debra Wood was born on June 23, 1950, and is a person over forty years of age at all pertinent times.  Plaintiff was employed by Defendant Verizon Wireless (hereinafter "Defendant" or "Verizon") as a Business Account Executive (hereinafter "BAE") salesperson

to sell Verizon wireless telephone services.  Prior to this employment, Plaintiff worked for eight years selling wireless services for AT&T.

According to Plaintiff, she was a successful salesperson, particularly in 2002, when she achieved productivity exceeding quota and earned several sales awards, and she earned a substantial income.  Plaintiff alleges that after this time, Defendant discriminated against her because of her age, retaliated against her because she opposed this discriminatory practice, and because she supported an older co-worker, Sandra Chevola, during the investigation of Chevola's charges of fraud against the Defendant.

In support of her claims of age and gender discrimination, Plaintiff specifically alleges that her supervisor, James Young, discriminated against her by calling her an "older lady" and likening her to his mother; after Young promised and assigned her a sales territory containing lucrative business zip codes in Tampa, he removed the most lucrative zip codes from that territory; that when she was transferred to a new territory in April 2003, she was denied a "ramp-up" for two to three months although younger, male salespersons, including Lenn Burgess, Gary Mariano, and John Christison, were afforded such a ramp-up; that Young allowed other BAEs to protect numerous existing accounts within Plaintiff's territory in contravention of the Defendant's internal "Rules of Engagement" policy and required Plaintiff to relinquish all of her existing accounts except Nielsen Media Research (hereinafter "Nielsen"), which Plaintiff had developed into a "National Account"; that Young thereafter required Plaintiff to relinquish 50% of her Nielsen employee sales to Dana Landis, while other salespersons were not required to relinquish their customer employee sales to other salespersons; later Young and Andrea Orr, Director of Florida Business Sales, informed

2

Plaintiff that the Nielsen account, as a national account, was being reassigned to a Major Account Manager, John Christison, a younger person who had less experience and was less qualified; unlike other younger BAEs, Plaintiff was not permitted to keep the Nielsen account as a protected account; and all of this done with the intent to force Plaintiff to resign.  Before taking the account from her, Plaintiff alleges that Young also denied her engineering support, data support, administrative assistance, and customer service support for the Nielson account, and he responded to few of Plaintiff's emails and voice mails requesting assistance for the account.

From April 2004 to March 11, 2005, Terry Fabbrini, the National Account Manager for the sales territory encompassing Nielsen; Christal O'Donoghue, Assistant Director of Major Accounts for the Tampa Bay area; and Bill Wark, a data support employee, humiliated Plaintiff publicly, were hostile toward her, and otherwise made the terms and conditions of employment intolerable, causing Plaintiff to become sick.

Regarding her claims of gender discrimination, Plaintiff also alleges Young favored males and treated similarly-situated males differently; permitted males such as Melio and Cuccia to pursue business within territories assigned to Plaintiff; belittled her and labeled her a "troublemaker" if she complained about the conditions of her employment.

Plaintiff asserts that she resigned on March 11, 2005, due to the intolerable conditions in the workplace.  Plaintiff alleges that upon her resignation, her remaining accounts were given to a younger employee, Lenn Burgess.

As for her claims for retaliation, Plaintiff alleges she witnessed Christal O'Donoghue publicly humiliate, embarrass, and belittle Chevola, a woman over forty years of age, who had

reported and objected to fraudulent activity by Defendant on the Omega Insurance account, which permitted Young and others to receive commissions on non-existent activations of cellular service.  Plaintiff alleges that such conduct was intended to force Chevola to resign so that a younger, male person could replace her.  By her allegations, Plaintiff was thereafter pressured by Young to testify in favor of Defendant and against Chevola in the follow-up investigation by Defendant of Chevola's charges.  By her account, the Nielson account was taken from her because of her testimony and support of Chevola, that is, in retaliation for her opposing Defendant's age, gender, and "whistleblower" retaliation against Chevola and because of her statements in support of Chevola's allegations of fraud.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations on or about July 15, 2005. She received a Notice of Suit Rights and then initiated this action by filing a five-count Complaint (Doc. 1).  Subsequently, she filed an Amended Complaint (Doc. 4) alleging age discrimination and retaliation for opposing age discrimination in violation of the Age Discrimination and Employment Act (hereinafter "ADEA"), 29 U.S.C. §§ 621-634 (Counts I and II, respectively); gender discrimination and retaliation for opposing sex/gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), 42 U.S.C. §§ 2000e-2000e-17 (Counts III and IV, respectively); age discrimination and retaliation for opposing age discrimination in violation of the Florida Civil Rights Act (hereinafter "FCRA"), Fla. Stat. §§ 760.01-760.11 (Counts V and VI, respectively); gender discrimination and retaliation for opposing gender discrimination in violation of the FCRA

4

(Counts VII and VIII, respectively); and a violation of the Florida Private Sector Whistle-

Blower's Act (hereinafter "FPWA"), Fla. Stat. §§ 448.101-448.105 (Count IX).

Defendant filed the instant motion (Doc. 5) seeking an order striking, pursuant to

Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiff's requests for compensatory

damages in Counts I and II and Plaintiff's requests for compensatory and punitive damages in

Count IX.  As grounds, Defendant argues that the relief sought by Plaintiff is not available as

a matter of law.  Defendant also seeks an order dismissing certain claims asserted in Counts II,

IV, VI, VIII, and IX for failure to state a claim upon which relief can be granted.  More

particularly, as to Counts II, IV, VI, and VIII, Defendant argues that Plaintiff's retaliation

claims are based on her *participation* in Verizon Wireless's internal investigation, which does

not constitute protected activity.  As for Count IX, Defendant maintains that there is no cause

of action under Florida Statutes section 448.102(2) because Plaintiff never complained to a

governmental agency as required by the subsection.

By her response in opposition (Doc. 7), Plaintiff agrees with the Defendant that

compensatory damages for mental distress are not recoverable under the ADEA and that her

prayer for compensatory damages may be stricken from both Counts I and II.  With respect to

her prayer for compensatory and punitive damages in Count IX, Plaintiff argues that her claim

for compensatory damages should be permitted as the FPWA expressly provides for "any

other compensatory damages allowable at law."  Fla. Stat. § 448.103(3).  She concedes,

however, that her claim for punitive damages should be stricken under the present case law.

With respect to Defendant's 12(b)(6) attacks on Plaintiff's age and gender retaliation

claims (Counts II, IV, VI, and VIII), Plaintiff maintains that her claims are brought under both

the opposition and the participation clauses of the ADEA, Title VII, and the FCRA.  She

concedes that under the present law, her *participation* in Defendant's internal investigation is

not protected activity under the participation clause of the ADEA, Title VII, or the FCRA that

they are appropriately dismissed.  Plaintiff argues that to the extent that she bases her

retaliation claims on her *opposition* to Defendant's unlawful conduct, Defendant has not

challenged these claims by the instant motion and they should not be stricken.

As to the Defendant's 12(b)(6) attack on Plaintiff's retaliation claim under the

FPWA (Count IX), Plaintiff argues that Defendant misreads subsection (2) of Florida Statutes

section 448.102 to limit the right of action to cases where the employee has provided

information only to a *governmental* agency, entity, or person with no right of action where, as

in this case, the information is provided as part of a company's internal investigation.  By

Plaintiff's argument, Defendant's interpretation is not only grammatically incorrect but is also

contrary to the purpose of the statute.  Plaintiff thus urges the court to deny Defendant's

motion to dismiss Count IX.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure is a motion attacking the legal sufficiency of a complaint.  In deciding such a

motion, the court must accept the facts pleaded as true and construe them in a light favorable

to the plaintiff.  See United States v. Pemco Aeroplex, Inc., 166 F.3d 1311, 1313 (11th Cir.

1999); Public Citizen, Inc. v. Miller, 992 F.2d 1548 (11th Cir. 1993) (per curium).  Rule

12(b)(6) motions are disfavored and are rarely granted.  See Brooks v. Blue Cross & Blue

Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  It will only be granted if the court

finds beyond a reasonable doubt that the plaintiff can prove no set of facts entitling them to

the relief sought.  See id. (citing Conley v. Gibson, 355 U.S. 41, 45-56 (1957)); Pataula Elec.

Membership Corp. v. Whitworth, 951 F.2d 1238, 1240 (11th Cir. 1992).  The test is not

whether the complainants will ultimately prevail but whether they are entitled to offer

evidence in support of the claims pleaded.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order

stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent,

or scandalous matter."  Fed. R. Civ. P. 12(f).  Although the court has considerable discretion

in ruling on a motion to strike, motions to strike are disfavored because of their drastic nature.

See Royal Ins. Co. of Am. v. M/Y Anastasia, Case No. 95CV60498/RV, 1997 WL 608722, at

*3 (N.D. Fla. 1997) (citations omitted).  "[A] court will not exercise its discretion under the

rule to strike a pleading unless the matter sought to be omitted has no possible relationship to

the controversy, may confuse the issues, or otherwise prejudice a party."  Ohio Nat'l Life

Assurance Corp. v. Langkau, No. 3:06-cv-290-J-20MCR, 2006 WL 2355571, at *1 (M.D. Fla.

Aug. 15, 2006) (quoting Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp., No. 97-

2866-CIV-T-17B, 1999 WL 781812, at *1 (M.D. Fla. Sept. 16, 1999)).

III.

A.

As to the matters that are conceded by Plaintiff, it is recommended that the court

grant in part Defendant's motion and strike from the Amended Complaint Plaintiff's requests

7

for compensatory damages in Counts I and II; Plaintiff's request for punitive damages in

Count IX; and Plaintiff's retaliation claims raised in Counts II, IV, VI, and VIII to the extent

that they purport to be based on her participation in Verizon Wireless's internal investigation.[1]

B.

Defendant also challenges Plaintiff's claim for compensatory damages requested in

Count IX,[2] Plaintiff's retaliation claim pursuant to the FPWA, to the extent that Plaintiff seeks

damages for emotional distress, humiliation, embarrassment, and other such non-economic

damages.  The statute specifically enumerates the relief that a court may order for a violation

of the FPWA:

> (a) An injunction restraining continued violation of this act.
> (b) Reinstatement of the employee to the same position held before the retaliatory personnel action, or to an equivalent position.
> (c) Reinstatement of full fringe benefits and seniority rights.
> (d) Compensation for lost wages, benefits, and other remuneration.
> (e) Any other compensatory damages allowable at law.

Fla. Stat. § 448.103(2).  Defendant argues that because recovery for non-economic damages is

not specifically enumerated, the plain language of the statute evidences the legislative intent to

exclude such relief under FPWA.  Defendant cites to several unpublished state court decisions

---

[1] Plaintiff also bases her retaliation claims on her opposition to unlawful employment practices under the ADEA, Title VII, and the FCRA.  Defendant's motion does not attack this aspect of Counts II, IV, VI, and VIII, and therefore these claims should not be stricken or dismissed.

[2] Plaintiff's FPWA claim makes a prayer for "compensatory damages" generally; she does not specify what type(s) of compensatory damages she seeks.  In her response to the instant motion, Plaintiff argues for the allowance of "mental distress damages," (Doc. 7 at 6), but she does not expressly state whether she is seeking mental distress damages or whether she seeks any other type of compensatory damage.

in support.[3]  In response to the motion, Plaintiff indicates that her claim for compensatory damages is based on the language in subsection (e), which provides for an award of "[a]ny other compensatory damages allowable at law." Fla. Stat. 448.103(2)(e).  In support of her position, Plaintiff cites to Branche v. Air Tran Airways, Inc., 314 F. Supp. 2d 1194 (M.D. Fla. 2004), and Scott v. Otis Elevator Co., 572 So. 2d 902 (Fla. 1990).

It is a fundamental principle of statutory construction that where the language of a statute is plain and unambiguous, the court should interpret the language in accordance with its plain meaning.  Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co., 945 So. 2d 1216, 1233 (Fla. 2006); Golf Channel v. Jenkins, 752 So. 2d 561, 564 (Fla. 2000).  It is also an accepted principle of statutory construction that the legislature does not intend to enact useless provisions, and courts should interpret statutes to give effect to all statutory provisions and to avoid readings that would render part of a statute meaningless.  Dadeland Depot, 945 So. 2d at 1233; State v. Goode, 830 So. 2d 817, 824 (Fla. 2002); Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992).

Defendant argues that the plain language of the statute limits the remedies available under the FPWA and that the statute does not specifically provide for an award of damages for non-economic injuries.  However, the interpretation of section 448.103 urged by Defendant would render the catch-all provision of subsection (e) meaningless.  The plain and

---

[3]Specifically, Defendant cites to Longo v. GTEFCU, Case No. 05-CA-1190-16-K (Fla. Cir. Ct. Dec. 15, 2005); Connolly v. City of Tallahassee, Case No. 02-CA-2919 (Fla. Cir. Ct. July 7, 2003); Schierling v. Shore, Case No. 97-CA-5331 (Fla. Cir. Ct. July 27, 1999); Perrey v. Fla. Ass'n of Court Clerks, Inc., Case No. 97-354 (Fla. Cir. Ct. July 9, 1998) (Doc. 5-1, Comp. Ex. A).

unambiguous language of the statute authorizes the court to award compensatory damages. The statute does not expressly limit compensatory damages to economic damages.  On the contrary, "[t]he use of the word, "compensatory," in section 448.103(2)(e) clearly indicates that putative damages and other forms of non-compensatory damages are unavailable to correct [FPWA] violations."  Branche v. Airtran Airways, Inc., 314 F. Supp. 2d 1194, 1196 (M.D. Fla. 2004).  While Defendant urges that section 448.103(2) provides an exclusive list of remedies available for violations of the FPWA, the catch-all provision of subsection (e) suggests otherwise.

The construction of this statutory provision is controlled by Florida law, yet this court's research has revealed no controlling decision on point by Florida Supreme Court or the Eleventh Circuit addressing this issue.  Defendant cites to a number of Florida Circuit Court decisions construing the FPWA as providing equitable remedies that maintain the status quo and put an employee back to the same or comparable position she occupied prior to the alleged retaliatory act.  These decisions hold that subsection (e) does not provide for actual, compensatory, or general damages, including claims for emotional pain and suffering damages and other "intangible damages."  See Connolly v. City of Tallahassee, Case No. 02-CA-2919, 3-4 (Fla. Cir. Ct. July 7, 2003); Schierling v. Shore, Case No. 97-CA-5331, 3-4 (Fla. Cir. Ct. July 27, 1999); Perrey v. Fla. Ass'n of Court Clerks, Inc., Case No. 97-354 (Fla. Cir. Ct. July 9, 1998) (Doc. 5-1, Comp. Ex. A).  The Perrey court reasoned:

> While the argument that "compensatory damages allowable at law"
> might be construed to include monetary damages for pain and suffering,
> mental distress, and the like, it is equally appealing that this phrase,
> when read in para materia with other remedies may be construed as
> allowing a judicial award of court costs or other consequent damages

flowing from the discriminatory job action of an employer.  Neither party to this action has provided the Court with any legislative intent concerning the promulgation of this statutory scheme, however, this Court has found such legislative intent to be something less than helpful in construing other, ambiguous statutory provisions in the past.

Perrey, No. 97-354 at 3-4.  As pointed out by the Plaintiff, however, section 448.104 separately authorizes an award of reasonable attorney's fees, court costs, and expenses to the prevailing party, and this court is unpersuaded that the legislature intended court costs to be one of the "compensatory damages" allowed by section 448.103(e).  Moreover, in each of these cases, the court addressed the equitable or legal nature of the remedial scheme of the FPWA as set out in section 448.103, particularly subsection (e), in order to determine whether the Plaintiff is entitled to a jury trial.

Other Florida courts have construed subsection (e) as allowing a plaintiff to seek legal remedies (as well as equitable remedies) and thus entitling the plaintiff to the right to a jury trial.  See Stephenson v. P.C.M.D. Mgmt., Inc., App. Case No. 2006-CA-000461, 2006 WL 3422573 (Fla. Cir. Ct. Nov. 16, 2006); McKerns v. WCI Communities, Inc., App. Case No. 502005CA006386, 2006 WL 1010505, at *3 (Fla. Cir. Ct. Apr. 6, 2006).[4]  Cf. Guess v. City of Miramar, 889 So. 2d 840 (Fla. Dist. Ct. App. 2004) (finding that disclosure requirements under the FPWA presents mixed questions of law and fact and finding that the trial court properly submitted the issue to the jury).

_____

[4]In addition to analyzing whether the remedies available under the FPWA are equitable or legal, these courts looked to whether the cause of action asserted is "of like nature" to a cause of action at common law at the time the Florida Constitution was adopted in 1845, since the right to jury trial is guaranteed by the United States and Florida Constitutions.  See In re Forfeiture of 1978 Chevrolet Van VIN: CGD1584167858, 493 So. 2d 433, 435-36 (Fla. 1986).

11

Although the court should not construe the statute to create rights of action not within the intent of the lawmakers as reflected by the language employed, the FPWA is remedial in nature and should be construed liberally so as to afford the remedy clearly intended.  Irven v. Dept. of Health & Rehab. Servs., 790 So. 2d 403, 405-06 (Fla. 2001) (citing Martin County v. Edenfield, 609 So. 2d 27, 29 (Fla. 1992); Golf Channel, 752 So. 2d at 566 n.4; Klepper v. Breslin, 83 So. 2d 587, 592 (Fla. 1955)).  The Florida Supreme Court has recognized the broad wording of the FPWA and the "inclusiveness of this right of action and the broad protections afforded."  Irven, 790 So. 2d at 406.

Given that the remedies intended by the legislature in section 448.103 are not clear, this court is guided by the directive of the Florida courts to construe the statute broadly.[5] Again, the plain language of the statute allows for an award of "[a]ny other compensatory damages allowable at law," and the court should deny Defendant's request to strike Plaintiff's claim for compensatory damages in Count IX.

---

[5]The court is also guided by the Florida Supreme Court's decision in Scott v. Otis Elevator Co., 572 So. 2d 902 (Fla. 1990).  There, the court answered the certified question of whether damages for emotional distress are available to a plaintiff bringing suit under the worker's compensation anti-retaliation provision, Fla. Stat. § 440.205.  Although the Defendant aptly notes that the worker's compensation statute does not expressly identify the types of damages available, the court's reasoning in Scott is nonetheless instructive.  There, the court noted that jurisdictions recognizing causes of action for retaliatory discharge have generally permitted recovery for emotional distress.  Scott, 572 So. 2d at 903.  The court further recognized that the nature of a cause action for wrongful termination of employment lies in tort, the court should utilize intentional tort damages, including emotional distress, in determining the extent of recovery.  Id.

C.

Finally, in its 12(b)(6) attack on Plaintiff's retaliation claim under the FPWA,

Defendant argues that Plaintiff's actions in providing information during Verizon Wireless's

internal investigation are not protected by section 448.102(2), which provides:

> An employer may not take any retaliatory personnel action against an
> employee because the employee has . . .
> (2) Provided information to, or testified before, any appropriate
> governmental agency, person, or entity conducting an investigation,
> hearing, or inquiry into an alleged violation of a law, rule, or regulation
> by the employer.

Id.  Specifically, Defendant argues that Plaintiff provided information only during an internal

investigation and did not provide the information or testimony to a *governmental* agency,

person, or entity conducting the investigation.[6]

In response, Plaintiff restates her claim that she objected to and refused to provide

favorable testimony for Defendant in its investigation into Sandra Chevola's allegations that

Defendant was committing fraud on an account.  Plaintiff argues that Defendant has

misinterpreted this statutory provision to require that the agency, person, or entity conducting

an investigation must be a governmental agency, governmental person, or a governmental

entity.  As Plaintiff interprets this provision, subsection (2)[7] of Section 448.102 provides a

cause of action where the employee suffers retaliation because he or she has provided

---

[6]Plaintiff's Amended Complaint asserts a claim under both subsection (2) and
subsection (3) of the FPWA.  Defendant's motion addresses subsection (2) only.

[7]As noted by the parties, Plaintiff's citation to section 448.102(b) and (c) in her
Amended Complaint (Doc. 4 ¶¶ 79, 80) is a typographical error; the subsections of section
448.102 are numbered (1), (2), and (3).

13

information to or testified before any appropriate governmental agency, *or any other* person or entity, governmental or not, conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by an employer.  By Plaintiff's argument, Defendant's interpretation is not only grammatically incorrect but is also contrary to the purpose of the statute.

Plaintiff's suggested construction of section 448.102(2) bears some appeal because section 448.101 defines the phrase, "appropriate governmental agency," while leaving the terms, "person" or "entity," undefined by the statute.  Additionally, the prohibitions contained in subsection (1) refer to an employee's disclosure or threatened disclosure of an employer's activity, policy, or practice that is in violation of a law, rule, or regulation to "any appropriate governmental agency," without reference to any other "person" or "entity."  However, the statute also fails to indicate what non-governmental person or entity would be "appropriate" to conduct an investigation as contemplated by the statute.  When carried to its logical conclusion, Plaintiff's interpretation would allow an employee to raise a FPWA claim if he or she provided information to or testified before *any* person or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by an employer.  Significantly, Florida courts have analyzed subsection 448.102(2) as "relating to governmental investigations," cf. Jenkins v. Golf Channel, 714 So. 2d 558, 562-63 (Fla. Dist. Ct. App. 1998), *approved and remanded by* Golf Channel, 752 So. 2d at 568; Baiton v. Carnival Cruise Lines, Inc., 661 So. 2d 313, 316 (Fla. Dist. Ct. App. 1995), and this interpretation is consistent with the legislature's intent to protect employees who "blow the whistle" on employers who violate a law, rule, or regulation.

14

The undisputed facts establish that Plaintiff provided information in support of Chevola only as part of an internal investigation by the Defendant.  I concur with the Defendant's view that insofar as Plaintiff seeks to state a claim under subsection (2) of the FPWA, the claim is barred because there is no evidence that such information was made to "any appropriate governmental agency, person, or entity conducting an investigation" as required by this subsection.  Accordingly, Defendant's motion should be granted in part and Count IX dismissed in part to the extent that this claim is raised under subsection (2) of the FPWA.

Finally, Plaintiff's FPWA retaliation claim also alleges that

> Defendant also took retaliatory action against Plaintiff because she objected to and refused to provide favorable testimony for Defendant in Defendant's investigation to discredit Sandra Chevola's allegations that the Defendant was in violation of law by practicing fraud upon the Omega Insurance account, Defendant's actions being in violation of §448.102(c) (sic), Florida Statutes[.]

(Doc. 4 ¶ 80).  As noted above, Defendant has not challenged the sufficiency of this allegation to state a claim for relief under subsection (3) of the FPWA, and the motion to dismiss Count IX should be denied in this respect.

IV.

For the foregoing reasons, it is RECOMMENDED that the court GRANT in part and DENY in part Defendant's Motion to Strike and Motion to Dismiss Certain Claims in Plaintiff's Amended Complaint (Doc. 5).  Specifically, it is RECOMMENDED that the court strike from the Amended Complaint Plaintiff's requests for compensatory damages in Counts

I and II; Plaintiff's request for punitive damages in Count IX; and Plaintiff's retaliation claims raised in Counts II, IV, VI, VIII, and IX to the extent that they purport to be based on her participation in Verizon Wireless's internal investigation.  It is further RECOMMENDED that the court DENY the motion to the extent that it seeks an order striking Plaintiff's prayer for compensatory damages in Count IX and/or a dismissal of Count IX as to Plaintiff's objection claim under subsection (3) of the FPWA.

Respectfully submitted on this
28th day of February 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record

16