UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEBRA WOOD,

        Plaintiff,

vs.                                        Case No. 8:06-CV-687-T-27TBM

CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS,

        Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the magistrate judge (Dkt. 64) recommending that Defendant's Motion for Summary Judgment (Dkt. 23) be granted in part and denied in part. The parties have objected to the Report and Recommendation (Dkts. 65, 66), each filing a response to the other's objections (Dkts. 73, 74). This Court is required to "make a *de novo* determination of those portions of the magistrate's report... to which objection is made." 28 U.S.C. § 636(b)(1). Reconsideration is appropriate when the report and recommendation is shown to be clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

Plaintiff initiated this action against Defendant alleging Defendant discriminated against her on the basis of her age and gender in violation of Title VII, the Americans with Disabilities Act ("ADEA"), and the Florida Civil Rights Act ("FCRA"). (Dkt. 4). Plaintiff also alleges claims for retaliation in violation of Title VII, the ADEA, the FCRA, and Florida's Whistleblower Protection Act ("FWPA"), Florida Statutes § 448.102(3). (Dkt. 4). Plaintiff maintains that she was discriminated against throughout her employment and as a result of discrimination and in retaliation

1

for her complaints, her most lucrative account, the "Nielsen Account," was reassigned. Plaintiff contends the conditions of her employment were such that she was constructively discharged.

The magistrate judge recommended that Defendant's motion be granted as to Plaintiff's age and gender discrimination claims. The magistrate judge found that Plaintiff minimally set forth a *prima facie* case but failed to rebut Defendant's legitimate non-discriminatory reason for reassigning the Nielsen Account. According to Defendant, the Account was reassigned because Defendant implemented a state-wide business realignment policy which called for the reassignment of major and national accounts from Business Account Executives, such as Plaintiff, to National Account Managers and Major Account Managers.

The magistrate judge recommended that Defendant's motion be denied as to Plaintiff's Title VII, ADEA and FCRA retaliation claims. The magistrate found that Plaintiff engaged in protected activity by opposing the harassment alleged by co-employee Sandra Chevola and that the short time between Plaintiff's opposition on September 23, 2004 and the October 21, 2004 meeting during which she was formally notified that the Nielsen Account was being reassigned sufficiently established a causal connection. The magistrate judge concluded that disputed issues of fact remain as to whether the reassignment of the Nielsen Account was in retaliation for Plaintiff's opposition to Defendant's treatment of Chevola.

Lastly, the magistrate judge recommended that Defendant's motion be granted as to Plaintiff's FWPA retaliation claim. The magistrate judge concluded Plaintiff failed to proffer evidence of an actual underlying violation of law, rule, or regulation.

*Plaintiff's Objections*

Plaintiff contends the magistrate judge overlooked evidence and improperly weighed

conflicting evidence in Defendant's favor. Specifically, with regard to Plaintiff's age and gender discrimination claims, Plaintiff contends the magistrate judge failed to consider that Defendant's written realignment policies provided for an exception for "extenuating circumstances," for which Business Account Executives were permitted to keep their national accounts. According to Plaintiff, Defendant breached its realignment policy because the circumstances surrounding the Nielsen Account justified her keeping the Account.

In late 2003 or early 2004, the decision was made to restructure Defendant's sales force in Florida by putting a strategic sales team in place. (Lanman Depo., p. 25). Michael Lanman, the Regional President of the Florida Region, characterized his decision to change the organizational structure of the Florida region as part of the company's greater objective to improve sales through a strategic division around national accounts. (Lanman Depo., pp. 25, 30-32). New company policies, known as the "Rules of Engagement," were drafted and adopted to clarify the roles and types of accounts sales members would manage under the realignment. (Lanman Depo., pp. 35-36). Under the Rules of Engagement, Business Account Executives, such as Plaintiff, were removed from accounts with more than 300 employees. In accordance with the realignment, National Account Managers and Major Account Managers would be responsible for those accounts. In relevant part, the Rules of Engagement provide:

> Extenuating circumstances may dictate that an existing National Account remain with a [Business Account Executive] based on proven activations and significant penetration. Channel Director will review activity and assign accordingly.

(Wood Depo., Ex. 40, p. 2).

While the Rules of Engagement provided for an exception to the general rule if "extenuating circumstances" warranted, Plaintiff has not established that Defendant acted contrary to the policy

3

in deciding to reassign the Nielsen Account. Nor has Plaintiff established that the decision makers (Andrea Orr, Michael Lanman, Jim Handley and Melissa Matos) acted with discriminatory animus in determining that although the circumstances did not warrant Plaintiff retaining the Nielsen Account, Plaintiff would be allowed to receive credit for Nielsen activations for several months after the reassignment. According to Orr, when determining whether Plaintiff would be allowed to retain the Nielsen Account, the decision makers considered Plaintiff's work on the data project under way, the relationship she had with the customer, and the customer's high regard for her. (Orr Depo., pp. 78-79). Orr testified that the customer was supposed to make a decision on the open project in November of that year. (Orr Depo., p. 79). According to Orr, the decision makers took that fact into consideration when they decided that Plaintiff could continue to work on the Account through the remainder of the year in hopes that she would reap the benefits of that open project. (Orr Depo., p. 79).

Contrary to Plaintiff's assertion, the fact that the Rules of Engagement left some discretion to the decision makers and that the decision makers relied on some subjective reasons for their decision to reassign the Account does not establish pretext. "A subjective reason for the employer's action can be as legitimate as any other reason, and an employee cannot substitute his business judgment for that of his employer." *Beard v. 84 Lumber Co.*, 206 Fed. Appx. 852, 858 (11th Cir. 2006) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1033 (11th Cir. 2000) (*en banc*)). Simply put, Plaintiff's conclusory allegations of discriminatory animus do not establish that Defendant's non-discriminatory reasons were a pretext for age or gender discrimination. *See Isenberger v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) ("conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext . . .").

Plaintiff also contends that the magistrate failed to consider the influence Plaintiff's immediate supervisor, James Young, had on the decision makers. According to Plaintiff, even though Young was not a decision maker, Young's discriminatory animus should be imputed to the individuals responsible for the decision.

Even assuming Young held discriminatory motives, Plaintiff fails to demonstrate that Young had any influence over the decision makers. The record is devoid of any evidence suggesting the decision makers failed to make their own independent determination, and merely acted as a conduit for Young. Moreover, Defendant correctly points out that at least in part, Young's recommendation benefitted Plaintiff financially, as he recommended that Plaintiff remain on the Account for a certain period of time after the transition so that she could continue to receive commissions from the Account. Contrary to Plaintiff's assertion, therefore, the magistrate judge did not improperly weigh evidence in Defendant's favor. This Court agrees with the magistrate judge's conclusion that Plaintiff failed to adequately rebut Defendant's articulated non-discriminatory reasons for reassigning the Nielsen Account. In this regard, Plaintiff's objection is overrruled.

With regard to her FWPA retaliation claim, Plaintiff contends the magistrate judge incorrectly concluded that Plaintiff failed to proffer evidence of an actual underlying violation of rule or law. Plaintiff argues that the evidence demonstrates that she opposed Defendant's discriminatory treatment of co-employee Sandra Chevola, which constitutes as illegal activity pursuant to the ADEA, Title VII, and Chapter 760, Florida Statutes. Plaintiff claims the magistrate judge improperly focused on whether Plaintiff voiced any opposition to the allegedly fraudulent activity on the Omega Insurance account.

Contrary to Plaintiff's argument, the magistrate judge *properly* focused on her allegations

concerning fraud on the Omega Insurance account because that is the only allegation pled in her Amended Complaint in support of her FWPA claim. (Dkt. 4, pp. 19-20). In the Amended Complaint, Plaintiff alleges that "Defendant took retaliatory action against her because she objected to and refused to provide favorable testimony for Defendant in Defendant's investigation to discredit Chevola's allegations that Defendant was in violation of law by practicing fraud upon the Omega Insurance account." (Dkt. 4, p. 20). With regard to her FWPA claim, Plaintiff does not allege that she opposed discrimination on Chevola's behalf. Neither does Plaintiff make this argument in her response to Defendant's motion for summary judgment. Plaintiff's response consists of one conclusory statement: "Young's suggestion that if [Plaintiff] testified favorably to the Company position [in connection with the investigation into Chevola's allegations of harassment] that it might affect her ability to keep [the Nielsen Account] violates § 448.102(3)." (Dkt. 44, p. 20). Plaintiff's attempt to recast her FWPA claim at this late juncture is inappropriate.

Nonetheless, Plaintiff fails to demonstrate that the unfair treatment she complained of on Chevola's behalf was unlawful discrimination in violation of Title VII, the ADEA or the FCRA. Pursuant to the FWPA, an employer is prohibited from taking retaliatory personnel action against an employee because the employee has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). In order to succeed on a claim pursuant to the FWPA, the plaintiff must establish that she complained of conduct that actually violates a law, rule or regulation. *See Colon v. Total Renal Care, Inc.*, 2007 WL 4145940, *3 (M.D. Fla. 2007) ("Florida law requires an actual violation of law or rule be committed . . . it is insufficient for the employee to reasonably believe or suspect that a violation has occurred"). Plaintiff has failed to establish that an actual violation of law, rule, or

6

regulation occurred in connection with Defendant's treatment of Chevola. Accordingly, her objection is overruled.

*Defendant's Objections*

Defendant contends the magistrate judge departed from well-settled precedent in analyzing three aspects of Plaintiff's retaliation claims. To establish a *prima facie* case of retaliation, Plaintiff must show (1) that she engaged in statutorily protected expression, (2) she suffered an adverse employment action, and (3) the adverse employment action was causally related to her protected activities. 42 U.S.C. § 2000e-3(a); *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). If Plaintiff establishes a *prima facie* case of retaliation, the burden shifts to Defendant to articulate legitimate reasons for the adverse employment action. *Id.* If Defendant does so, Plaintiff must demonstrate that the reasons Defendant gave were pretextual. *Id.* Defendant challenges the magistrate judge's conclusions regarding the first and third elements of Plaintiff's *prima facie* case and his conclusion that questions of material fact exist regarding pretext.

Defendant contends summary judgment on Plaintiff's retaliation claims is proper because Plaintiff did not engage in protected conduct under the opposition clause. Pursuant to the opposition clause, an employee is protected from retaliation if "he has opposed any practice made an unlawful employment practice by [Title VII]." *Clover v. Total Systems Services, Inc.*, 176 F.3d 1346, 1350 (11th Cir. 1999). Employees who seek protection under the opposition clause must have a "good faith, reasonable belief" that the employer has engaged in unlawful discrimination. *Clover*, 176 F.3d at 1351 ("[w]e do not mean to hold that the conduct opposed must actually be [unlawful], but it must be close enough to support an objectively reasonable belief . . ."). The objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be

7

measured against existing substantive law. *See Clover*, 176 F.3d at 1351 (citing *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 n. 2 (11th Cir.1998) (failure to charge the employee who opposes an employment practice with substantive knowledge of the law "would eviscerate the objective component of our reasonableness inquiry")).[1]

Although a close call, when the evidence is viewed in the light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff's subjective belief that she was opposing unlawful harassment and discrimination was objectively reasonable. While she did not use the term "sex or age discrimination," she reported a "hostile environment" to John Lucas, manager of employee relations, during the course of a formal company investigation into Chevola's allegations of harassment. She also reported to Lucas that her supervisor, James Young, favored men over women. During his interview with Plaintiff, Lucas took note that Plaintiff reported: "Reps are talking to attorneys. Accounts being taken away. Hostile environment. People have tried and tried to resolve issues. " (Lucas Depo., Ex. 1, Bates No. 000487). Lucas testified that during his interview, Wood complained that her direct supervisor, James Young, gave more appointments to men, with the exception of "Colette." (Lucas Depo., pp. 69-70). According to Lucas, he personally inquired about the handling of the Nielsen Account because Plaintiff "had raised some concerns that she was not being treated fairly" and complained that Young was allowing men to invade her territory. (Lucas

---

[1] For opposition clause purposes, "the relevant conduct does not include conduct that actually occurred or may have been reported in an EEOC complaint by the alleged victim, but was unknown to the person claiming protection under the opposition clause." *Clover*, 176 F.3d at 1351. Only the conduct opposed by the individual seeking protection under the opposition clause is relevant to the inquiry. *Id.* Accordingly, Chevola's complaints of harassment and discrimination are not relevant. Rather, when assessing the reasonableness of Plaintiff's belief that she was opposing unlawful discrimination during her interview with John Lucas, this Court must look at the specific conduct she reported to Lucas during the interview and whether objectively, a reasonable person would have believed that conduct amounted to unlawful discrimination. *Clover*, 176 F.3d at 1351.

Depo., pp. 73-74).

General complaints of "harassment" or a "hostile environment" without suggestion that the mistreatment is based on sex or race do not constitute statutorily protected activity. *See Jeronimus v. Polk County Opportunity Council, Inc.*, No. 05-10372, 145 Fed. Appx. 319, 326 (11th Cir. August. 11, 2005); *see also Contu v. Martin County Bd. of County Commr's*, 47 F.3d 1068, 1074 (11th Cir. 1995) ("unfair treatment, *absent discrimination* based on race, sex, or national origin, is not an unlawful employment practice under Title VII") (emphasis added). Here, however, in addition to her general complaints of unfair treatment, harassment, and a hostile environment, Plaintiff reported that her direct supervisor, James Young, favored men over women. This fact distinguishes this case from the cases relied on by Defendant in its objections to the Report and Recommendation.

While the bulk of Plaintiff's retaliation claims is focused on her opposition to Chevola's treatment, a reasonable fact finder could infer that Plaintiff opposed her own mistreatment during the interview, which she likened to Chevola's treatment, because they both were older female employees. For purposes of her Title VII, ADEA and FCRA retaliation claims, Plaintiff need not establish that the conduct she complained of was in fact unlawful harassment or gender discrimination. *See McConnell v. Westpoint Stevens, Inc.*, 168 Fed. Appx. 911, 914, 2006 WL 452095, *3 (11th Cir. 2006). Rather, it is sufficient that the conduct be "close enough to support an objectively reasonable belief that it [was unlawful]." *Id.* This Court cannot conclude as a matter of law that Plaintiff did not report any conduct that objectively could be believed to be unlawful. Albeit minimally, Plaintiff's testimony that her supervisor gave more appointments to men than women qualifies as conduct "close enough" to support an "objectively reasonable belief" that at least some

9

of the conduct Plaintiff complained of was proscribed by law. Accordingly, Defendant's objection in this regard is overruled.

Second, Defendant contends that Plaintiff's retaliation claims fail because there is no causal connection between Plaintiff's complaints to Lucas and the transfer of the Nielsen Account. Defendant argues that the decision to transfer the Account was the result of the business realignment which occurred before Plaintiff's September 23, 2004 interview with Lucas. Defendant relies on *Clark County School District v. Breeden,* 532 U.S. 268, 272 (2001). Defendant's argument in this regard has merit.

In *Clark*, the Supreme Court held that employers "need not suspend previously planned [actions] upon discovering that [an employee has opposed its employment practices], and their proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality." *Id.* Defendant correctly points out that the Report and Recommendation does not address the applicability of *Clark* in its causal connection analysis.

In discussing whether Plaintiff established a causal connection between her opposition to mistreatment and the loss of the Nielsen Account, the magistrate judge found "the matter a much closer call." (Dkt. 64, p. 26). The magistrate judge focused on the brief time between Plaintiff's opposition and when she was formally noticed that she would lose the Nielsen Account: "I conclude that the short time span between Plaintiff's opposition and the meeting at which she was formally noticed that she was losing the Nielsen account, coupled with her evidence that Mr. Young attempted to discourage her opposition upon pain of losing the Nielsen account, carry the day for Plaintiff." (Dkt. 64, p. 26).

10

The short time frame between Plaintiff's opposition and the reassignment of the Nielsen Account would ordinarily be sufficient to meet the causal connection element of a *prima facie* case. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). Here, however, it is undisputed that Defendant had decided to implement its business realignment plan, which contemplated the transfers of large accounts, in late 2003 or early 2004, months before Plaintiff's September 23, 2004 interview with Lucas. (Lanman Depo., pp. 25, 30 - 32; Orr Depo., p. 89). Although exactly when the final decision to transfer the Nielsen Account was made is unclear, the evidence demonstrates that at least as early as September 16 and 17, 2004, before Plaintiff interviewed with Lucas, she was aware of the policy and that it called for the reassignment of the Nielsen Account. (Wood Depo., p. 532).[2]

Considering this record evidence, this Court disagrees with and therefore rejects the magistrate judge's conclusion that Plaintiff established a causal connection between her opposition and the loss of the Nielsen Account. The business realignment plan was already in place and large accounts, including the Nielsen Account, were in the process of being transferred when Plaintiff met with Lucas and voiced her opposition to mistreatment. Under these facts, Defendant was not required to suspend its business realignment plan after Plaintiff voiced her opposition to what she considered to be discriminatory mistreatment. *See Clark*, 532 U.S. at 272 ("[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed . . . ").

---

[2] To the extent Young's statement to Plaintiff factored into the magistrate's analysis, it is undisputed, and the magistrate so found, that Young did not participate in the decision to realign the large business accounts or whether to make an exception for Plaintiff. (Orr Depo., pp. 77-78; Young Depo., pp. 130-33). Young's involvement was limited to recommending that Plaintiff keep the Nielsen Account for a short time to facilitate the transition, a recommendation the evidence demonstrates was to Plaintiff's benefit. (Orr Depo., pp. 78 -81).

Notwithstanding that the reassignment of the Nielsen Account was not completed until after Plaintiff's interview with Lucas, Plaintiff has not established a causal connection between her complaints to Lucas and Defendant's decision to reassign the Nielsen Account, since it is undisputed that Defendant was merely "proceeding along lines previously contemplated." *Clark*, 532 U.S. at 272. Accordingly, Plaintiff fails to establish an essential element of her retaliation claims and summary judgment on these claims is appropriate.[3]

*Conclusion*

After careful consideration of the Report and Recommendation and an independent review of the record, this Court concludes that the Report and Recommendation should be adopted in part and rejected in part. Accordingly, it is **ORDERED AND ADJUDGED:**

1) The Report and Recommendation (Dkt. 64) is adopted in part and rejected in part, consistent with this Order.

2) Defendant's Motion for Summary Judgment (Dkt. 23) is **GRANTED.**

3) The Clerk shall enter judgment in favor of Defendant and against Plaintiff on all counts of Plaintiff's Amended Complaint. The Clerk is directed to close this case.

**DONE AND ORDERED** in Tampa, Florida, on this 23rd day of January, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[3] It is unnecessary to address Defendant's objections to the magistrate judge's conclusion regarding pretext because Plaintiff failed to establish a *prima facie* case of retaliation.